FILED

February 21, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 1:33 PM



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| SISOUPHAHN THYSAVATHDY, | ) | Docket No.: 2014-05-0026 |
| Employee, | ) | |
| v. | ) | |
| BRIDGESTONE AMERICAS TIRE | ) | State File No. 87347-2014 |
| OPERATIONS, | ) | |
| Employer. | ) | |
| And | ) | |
| OLD REPUBLIC INS. CO., | ) | Judge Audrey Headrick |
| Insurance Carrier. | ) | |

## COMPENSATION HEARING ORDER

This matter came before the undersigned Workers' Compensation Judge on January 30, 2017, for a Compensation Hearing. The primary legal issue is whether Mr. Thysavathdy provided sufficient notice to Bridgestone and, if so, whether he proved by a preponderance of the evidence that he sustained a compensable injury. For the reasons set forth below, this Court finds Mr. Thysavathdy provided sufficient notice but did not establish by a preponderance of the evidence that he sustained a compensable injury.

### History of Claim

This case involves an incident that allegedly occurred on July 15, 2014, when Mr. Thysavathdy was "pulling," or picking up tires from the floor using both hands. He testified he felt an immediate onset of excruciating pain in his left shoulder when he pulled a tire.[1] This alleged incident occurred approximately one week after he returned to work following his recovery from a pacemaker surgery. The parties stipulated that Mr. Thysavathdy is claiming he sustained an acute injury of the left shoulder. Mr. Thysavathdy testified he told his supervisor, Marshaye Glasscock, the next day that he

---

[1] Mr. Thysavathdy, who came to the United States when he was 19, testified in Laotian through a state-certified interpreter. He worked for Bridgestone for seven years and testified he communicated effectively while working there. Mr. Thysavathdy also stated he communicated effectively with his physicians without an interpreter.

1

hurt his left shoulder when he was picking up tires. Mr. Thysavathdy acknowledged that he did not provide written notice to Bridgestone.

Mr. Thysavathdy continued to work after July 15 and did not seek any medical treatment until two months later when he went to a walk-in clinic. The record reflected his chief complaint was cough, including chest wall pain during a cough. Mr. Thysavathdy was adamant during the hearing that he sought treatment for his left shoulder injury and not a cold. He also stated he specifically told the provider about his injury. The record indicated he told the provider he worked at Bridgestone pulling tires all day and he reported "pain in the arm, left [underarm] during a cough and right arm." (Ex. 4.) Significantly, Mr. Thysavathdy also gave a history of receiving a pacemaker in March 2014.

A week later, Mr. Thysavathdy saw his primary care physician, Dr. Steven Johnson. He complained of having left upper chest and shoulder pain for the past two weeks. The history given reflected Mr. Thysavathdy told Dr. Johnson that his job at Bridgestone exacerbated his condition. He related his chest, arm, and shoulder soreness to his job. However, Mr. Thysavathdy also told Dr. Johnson that he experienced soreness since the pacemaker implant in March 2014. (Ex. 1.) During the hearing, Mr. Thysavathdy denied hurting after placement of the pacemaker. He insisted he told Dr. Johnson that he was hurt pulling a tire, but the medical record is silent on that issue.

Mr. Thysavathdy filed a Petition for Benefit Determination (PBD), and Bridgestone offered him a panel of physicians from which he selected Dr. Vincent Novak with Premier Orthopaedics. Dr. Novak's note indicated he reviewed the Medical History form completed prior to the examination. With regard to that form, Mr. Thysavathdy testified he wrote his name and "7/15/14" at the top in response to the question asking how long he had experienced the problem. He stated a staff member in Dr. Novak's office completed the form for him since he did not understand what he was reading.[2] In response to the question asking "[h]ow did it happen," the staff member wrote "using L arm pulling tires." (Ex. 2; 10.) The form indicated the staff member checked that Mr. Thysavathdy had a work-related injury on July 15, 2014.

Mr. Thysavathdy discussed his left shoulder condition with Dr. Novak. He stated he pulled tires weighing thirty to forty pounds each at Bridgestone. He complained of "slow progressive worsening of left shoulder/axillary pain over the last to [sic] six months with no known acute injury." (Ex. 2.) Mr. Thysavathdy estimated the date of onset as July 15, 2014. However, Dr. Novak noted he "again denies any specific acute injury (no specific mechanism, location, specific date/time)." *Id.* Despite Mr. Thysavathdy's assertions that communication problems existed with the doctor, Dr. Novak specifically stated that Mr. Thysavathdy "appears to verbally communicate

---

[2] Mr. Thysavathdy did not complete high school or obtain a GED.

2

effectively." *Id.* Mr. Thysavathdy asserted that Dr. Novak may not have looked at the Medical History form. However, the office note clearly reflected, "ROS [Range of Systems] and PFSH [Past, Family and Social History*] per history questionnaire 12/29/14 reviewed, as in HPI [History of Present Illness]." Id.* (Emphasis added.) Additionally, Dr. Novak's note indicated he reviewed recent office notes from Mr. Thysavathdy's cardiologist and from Dr. Johnson.

Dr. Novak addressed causation after examining Mr. Thysavathdy and reviewing x-rays taken in his office. He gave the following opinion regarding causation: "I am unable to identify any specific work-related injury to the patient's left shoulder—specifically as he is unable to identify any specific date/time, location or a specific/acute injury/mechanism which precipitated his pain/problems. I understand and appreciate that activities (including work) make his pain worse." *Id.* After receiving Dr. Novak's assessment, Bridgestone filed a Notice of Controversy disputing the compensability of the claimed injury.

Mr. Thysavathdy then sought unauthorized treatment, including arthroscopic shoulder surgery, with Dr. Roderick Vaughan. The parties deposed Dr. Vaughan. Prior to surgery, Mr. Thysavathdy's CT arthrogram was normal except for arthritis and thickening of the supraspinatus tendon. In addition to the pre-operative diagnoses of rotator cuff syndrome, adhesive capsulitis, and arthritis, he diagnosed Mr. Thysavathdy post-operatively with a partial thickness tear of his rotator cuff. However, Dr. Vaughan stated the adhesive capsulitis was the predominant finding.

During his deposition, Dr. Vaughan explained that Mr. Thysavathdy's condition is multifactorial. On direct examination, the following dialogue occurred:

Q: Now, do you have an opinion as to what caused the condition that you treated him for, for his shoulder?
A: Yes.
Q: What was that?
A: Well, I think it's potentially multifactorial; however, [Mr. Thysavathdy] associated the onset of his symptoms with specifically pulling a tire at work.
. . .
Q: Assuming the truth of the history he gave you of pulling the tires at work, do you have an opinion as to whether that was the primary cause of the injury that you treated him for?
A: Yes.

(Ex. 6 at 10.) Although Dr. Vaughan indicated he had an opinion, he did not verbalize it. However, later in his deposition, he stated that, "the reason I associate [Mr. Thysavathdy's] symptoms predominantly with his work injury is because he described it very specifically, that it was a single event that he clearly recalled." *Id.* at 20.

3

Dr. Vaughan testified regarding the different factors that potentially contributed to Mr. Thysavathdy's condition. He indicated Mr. Thysavathdy's previous chest pacemaker surgery in March 2014, four months before the July 2014 tire incident, is a potential or contributing factor associated with the formation of adhesive capsulitis in the shoulder. Dr. Vaughan stated there were also other contributing factors involving Mr. Thysavathdy's age, such as underlying arthritis, cartilage wear, labral tear, rotator cuff degeneration and partial tearing. Dr. Vaughan further testified that, more likely than not, it was a multifactorial condition for which he treated Mr. Thysavathdy. *Id.* at 32-33.

During cross-examination, Dr. Vaughan confirmed that the causation opinion he provided in 2015 remains the same.

> Q: . . . And I believe you have said in the past—and I'll quote this to you— that the degenerative joint disease was certainly preexisting. [Mr. Thysavathdy] indicated the onset of the symptoms was a specific pulling event. There's a potential for a partial rotator cuff tear, as well as the probability that this strain may have contributed to his adhesive capsulitis and/or regional pain syndrome. And that you estimate that it certainly is probable, in correlation with his history, that it's work-related. Is that still your opinion today, that it's just probable?
>
> A: Yes.

*Id.* at 29.

### Findings of Fact and Conclusions of Law

The following legal principles govern this case. Mr. Thysavathdy has the burden of proof on all essential elements of his claim. Tenn. Code Ann. § 50-6-239(c)(6) (2016); *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff,* 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2016). Stated another way, preponderance of the evidence simply means more likely than not.

### *Notice*

In order to obtain benefits, Mr. Thysavathdy must first establish he provided timely notice to Bridgestone. The law requires that an employee must provide the employer with notice within thirty days of the injury unless the employee has a

4

"reasonable excuse for failure to do so." Written notice is required unless either the employer had actual notice of the accident or the employee had a reasonable excuse for failing to give notice. Failure to provide notice can act as a complete bar to recovery, but it will only bar recovery to the extent that the employer was prejudiced. *See* Tenn. Code Ann. § 50-6-201(a)-(b) (2015).[3] However, when an employer raises lack of notice as a defense, the burden is on the employee either to show that he gave notice, the employer had actual notice, or the failure to give notice was reasonable under the circumstances. *Hosford v. Red Rover Preschool*, TN Wrk. Comp. App. Bd. LEXIS 1, at *15 (Oct. 2, 2014), *quoting* Tenn. Code Ann. § 50-6-201(a)(1) (2014).

Here, Bridgestone argues that Mr. Thysavathdy failed to provide adequate notice of his alleged July 15, 2014 injury. The Court disagrees. Bridgestone contends that Mr. Thysavathdy did not provide notice until he filed a PBD on November 10, 2014. However, Mr. Thysavathdy's unrebutted testimony is that he told his supervisor the day after his alleged injury that he hurt his left shoulder when he was picking up tires. The Court finds that Mr. Thysavathdy's verbal notice to his supervisor constitutes actual notice under Tennessee Code Annotated section 50-6-201(a) (2015). Further, Bridgestone failed to demonstrate prejudice due to any such delay even if it had shown that Mr. Thysavathdy failed to provide actual notice. Therefore, the Court holds that Mr. Thysavathdy provided actual notice to Bridgestone the day after his alleged injury.

*Compensability*

Having addressed the notice issue, the Court will now consider the compensability issue. For his injury to be compensable, Mr. Thysavathdy must show his injury arose "primarily" out of and in the course and scope of his employment at Bridgestone. He must also show, "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." The legislature defined "[s]hown to a reasonable degree of medical certainty" to mean the physician must opine "it is more likely than not considering all causes, as opposed to speculation or possibility." Further, as the panel physician, Dr. Novak's opinion regarding causation "shall be presumed correct but this presumption shall be rebuttable by a preponderance of the evidence." *See generally* Tenn. Code Ann. § 50-6-102(14) (2016).

Applying these legal principles to this case, the Court finds Mr. Thysavathdy has not rebutted the presumption of correctness given to Dr. Novak's opinion and is not entitled to the requested benefits. Essentially, Mr. Thysavathdy's argument was three-fold. First, he argued that his English is limited, which presented a barrier in Dr. Novak understanding him. Second, Mr. Thysavathdy argued that Dr. Novak did not review the

---

[3] The Court cited the 2015 version of the notice requirement in Tennessee Code Annotated section 50-6-201(a), which applies to Mr. Thysavathdy's alleged July 15, 2014 injury. In 2016, the notice requirement changed from thirty days to fifteen days for injuries occurring on or after July 1, 2016.

Medical History form completed by a staff member on his behalf, which provided the date his symptoms began, the description of pulling tires, and a check indicating it was work-related. Finally, he argued the Court should give greater weight to Dr. Vaughan's recent opinion provided after performing his surgery.

Mr. Thysavathdy's argument that a communication barrier existed with Dr. Novak is without merit. In his office note, Dr. Novak specifically stated Mr. Thysavathdy "appears to verbally communicate effectively." (Ex. 2.) Likewise, Mr. Thysavathdy testified that he had no communication problem with Dr. Novak. Therefore, the Court finds that this argument fails to rebut the presumption of correctness given to Dr. Novak's opinion.

Mr. Thysavathdy also argued that Dr. Novak did not review the Medical History form. However, Dr. Novak specifically referenced the fact that he reviewed the questionnaire including the History of Present Illness section. Mr. Thysavathdy stated his problem began on July 15, 2014, when he was using his left arm pulling tires. However, Dr. Novak reiterated in his office note that Mr. Thysavathdy denied the occurrence of a specific, acute injury. (Ex. 2; 10.) The Court notes that Mr. Thysavathdy stipulated that his claim involved an acute left shoulder injury. Therefore, the Court finds this argument is also without merit.

The Court next considers Mr. Thysavathdy's argument that Dr. Vaughan's post-operative opinion rebuts the presumption of correctness by a preponderance of the evidence. Although Dr. Vaughan acknowledged Mr. Thysavathdy's history of a specific incident occurring on July 15, 2014, a careful review of his deposition demonstrates that his opinion is that Mr. Thysavathdy's condition is, more likely than not, multifactorial. (Ex. 6 at 32-33.) Dr. Vaughan further testified that it is "probable" that Mr. Thysavathdy's condition is work-related. *Id.* at 29. After considering Dr. Vaughan's deposition testimony as whole, the Court concludes that his opinion does not satisfy the requirement that the tire-pulling incident "more likely than not considering all causes, as opposed to speculation or possibility" caused Mr. Thysavathdy's left shoulder condition. *See* Tenn. Code Ann. § 50-6-102(14)(D) (2016). Therefore, the Court holds that Dr. Vaughan's opinion fails to rebut the presumption of correctness given to Dr. Novak.

After careful consideration of the evidence as a whole, this Court concludes Mr. Thysavathdy failed to establish, by a preponderance of the evidence, his left shoulder condition arose primarily out of and in the course or scope of his employment with Bridgestone. In light of this holding, the Court denies Mr. Thysavathdy's request for medical benefits, temporary disability benefits, and permanent disability benefits.

This Court taxes the court costs of $150.00 to Bridgestone pursuant to Tennessee Compilation Rules and Regulations Rule 0800-02-21-.07 (2016). Further, Bridgestone

shall prepare and submit a Statistical Data Form for this matter within ten calendar days of the date of judgment.

IT IS, THEREFORE, ORDERED that the claim of Mr. Thysavathdy against Bridgestone or its workers' compensation carrier is denied.

**ENTERED this the 21st day of February, 2017.**

_Audrey Headrick_

**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

# APPENDIX

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Transfer Order
5. Notice of Deposition of Employee, Sisouphahn Thysavathdy
6. Witness List, Exhibit List & Statement Exhibits Sent to Opposing Counsel, and List of Unresolved Evidentiary Disputes
7. Motion for Evidentiary Hearing
8. Motion to Strike Medical Records
9. Order Denying Bridgestone's Motion for Evidentiary Hearing and Motion to Strike Medical Records
10. Expedited Hearing Order Denying Requested Benefits
11. Initial Hearing Order
12. Joint Motion to Continue Compensation Hearing and Extend all Deadlines by 90 Days
13. Order Granting Joint Motion to Continue Compensation Hearing and Extend all Deadlines by 90 Days
14. Second Initial Hearing Order
15. Joint Motion to Continue
16. Agreed Order
17. Dispute Certification Notice
18. Stipulation of the Parties for Final Compensation Hearing
19. Index of Exhibits for Joint Pre-Compensation Hearing Statement
20. Pre-Hearing Brief Filed on Behalf of the Employer for the Final Compensation Hearing
21. Index of Exhibits for Pre-Hearing Brief Filed on Behalf of the Employer for the Final Compensation Hearing
22. Pre-Hearing Brief of the Employee for the Final Compensation Hearing
23. List of Exhibits for Pre-Hearing Brief Filed on Behalf of the Employee for the Final Compensation Hearing
24. Order on Filing of Medical Records for Compensation Hearing
25. Stipulation of Medical Records by Parties Per January 23, 2017 Order
26. Chronological Table of Contents

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Compensation Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Exhibits:
1. Medical certification and records from Brentwood East Family Medicine
2. Medical certification and records of Dr. Vincent P. Novak
3. Medical certification and records of Dr. Steven Humphrey
4. Medical certification and records from Take Care Health Tennessee, P.C./Walgreens
5. Personnel file of Mr. Thysavathdy
6. Deposition of Dr. Vaughan
7. Dr. Vaughan's deposition exhibits
8. C-42 Panel
9. Notice of Controversy
10. Dr. Vaughan's intake form

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 21st day of February, 2017.

| Name | Certified Mail | Via Email | Service sent to: |
|---|---|---|---|
| **Steve C. Norris, Esq., Attorney for Employee** | | X | steve@stevecnorris.com |
| **Leslie F. Bishop, Esq., Attorney for Employer** | | X | lbishop@lewisthomason.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**